## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE | **Case No. 25-20295-NGH** |
| **POLELINE LENDER LLC,** | |
| **Debtor.** | |

## MEMORANDUM OF DECISION

**INTRODUCTION**

On February 5, 2026, Patrick Geile ("Geile") filed an initial fee application as counsel for Poline Lender LLC ("Debtor").  Doc. No. 44 (the "Fee Application").  The United States Trustee ("UST") objected to the Fee Application, Doc. No. 47 (the "Objection"), and following an April 14, 2026, hearing, it filed a supplement specifically identifying objectionable time entries, Doc. No. 55 (the "Supplement").  Geile filed a response to the Supplement.  Doc. No. 59 (the "Response").  Stephen Davis, a member of Debtor's managing entity DWD Development LLC, also filed a declaration in support of the Fee Application.  Doc. No. 60.  Having considered the record, this decision constitutes the Court's findings of fact and conclusions of law in accordance with Rules 7052 and 9014.[1]

---

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all citations to "Rule" are to the Federal Rules of Bankruptcy Procedure.

MEMORANDUM OF DECISION - 1

**RELEVANT FACTS**

Debtor filed a chapter 11 bankruptcy on September 8, 2025 (the "Petition Date"). In its petition, Debtor acknowledged this is a single asset real estate case under § 101(51B). *See* Doc. No. 1. Also on the Petition Date, Geile and his associate Jared Smith each filed separate applications to be employed as Debtor's counsel. Doc. Nos. 8, 9.[2] The Court approved the employment applications on October 8, 2025. Doc. No. 16.

Under the employment applications, the applicable rates were $440 per hour for partners, $300 per hour for associates, and $100 per hour for legal assistants. Prior to the bankruptcy filing, Debtor paid Geile a $30,000 retainer, of which $10,237.32 was applied to pre-petition work, leaving a balance of $19,762.68 in Geile's trust account as of the Petition Date. Pursuant to the Fee Application, Geile seeks $28,486.00 in fees and reimbursement of $173.92 in expenses. No party has objected to the expense reimbursement.

**ANALYSIS**

### A. Standards for Compensation

Under § 330(a)(1), a professional employed pursuant to § 327(a) may be awarded reasonable compensation for actual, necessary services rendered by the professional and any paraprofessional staff, as well as reimbursement for actual, necessary expenses. Under § 330(a)(2), the Court may award less than the amount requested. In determining reasonable compensation, the Court must consider "the nature, the extent, and the value of such services, taking into account all relevant factors," including:

---

[2] Only one itemized time entry in the Fee Application was attributed to Smith.

MEMORANDUM OF DECISION - 2

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Section 330(a)(3).  Moreover, the Court cannot allow compensation for unnecessary duplication of services or those not reasonably likely to benefit the estate or necessary for administration of the case.  *See* § 330(a)(4)(A).  The burden rests on the applicant to demonstrate that the fees requested are reasonable.  *In re Gilsvik*, 673 B.R. 745, 751 (9th Cir. BAP 2025) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

**B.      The Objections**

The UST objects to the Fee Application on four main grounds: (1) vague time entries; (2) improper lumping of time entries; (3) duplication of services; and (4) billing for unnecessary services.  The Court addresses each in turn.

**1.      Vague time entries**

Billing entries must provide the Court sufficient detail to evaluate the work performed.  *Bennetti v. Oxford Restructuring Advisors LLC (In re CPESAZ Liquidating, Inc.)*, 2022 WL 18067792, at *7 (9th Cir. BAP Dec. 29, 2022).  For example, descriptions that consist only of "conferences," "telephone calls," or "review of documents" are too vague to review.  *Santiago v. Equable Ascent Fin.*, 2013 WL

MEMORANDUM OF DECISION - 3

3498079, at *5 (N.D. Cal. July 12, 2013).  Courts have rejected fee awards for entries that "fail to identify the subject matter of the documents reviewed or the topic of conversation in a telephone conference." *Wilder v. Bernstein*, 1998 WL 323492, at *6 (S.D.N.Y June 18, 1998); *see also In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990) (holding that time entries in which "no mention is made of the subject matter of a meeting, telephone conference or the work performed" are "not adequately documented").

The UST identified 27 time entries as vague, though Geile elected not to seek compensation for five of them.  The remaining entries lack sufficient detail for the Court to assess the nature and scope of the work performed.  The Court finds these entries notably deficient, as clear and descriptive time entries are a basic professional requirement for attorneys seeking court approval of their fees.  Given Geile's more than 20 years of experience and an hourly rate among the highest in the Boise market, the Court expects that both the work and its documentation will reflect that level of expertise. The vague time entries fall short of that expectation.

In his Response, Geile recognized the itemized time entries were deficient and committed to improving his billing practices moving forward, which the Court appreciates.  Geile also supplied additional context for most of the identified entries, which the Court found largely sufficient to evaluate the work performed.  After carefully reviewing the Response, the Court determines the UST's objection to the following entries will be sustained, as the descriptions remain insufficient to assess what work was actually performed:

MEMORANDUM OF DECISION - 4

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| 09/15/2025 | 1 email sent/reviewed regarding Trustees sale | 0.10 | $440.00 | $44.00 |
| 09/15/2025 | 1 email sent/reviewed regarding notice Poleline Lender LLC Bankruptcy LLC | 0.10 | $440.00 | $44.00 |
| 10/08/2025 | [1]Poleline_Petition reviewed | 0.10 | $440.00 | $44.00 |
| 10/08/2025 | 1 email sent/reviewed regarding Chapter 11 Bankruptcy / Case No. 25-20295-NGH | 0.10 | $440.00 | $44.00 |
| 10/14/2025 | Memo created - status | 1.20 | $440.00 | $528.00 |
| 10/15/2025 | [1]Poleline_Petition reviewed | 0.10 | $440.00 | $44.00 |
| 11/20/2025 | Review information related to plan | 0.60 | $440.00 | $264.00 |
| 12/30/2025 | 2 emails sent/reviewed regarding Confirmed Re: In Aid of Discussion Re: Yes Am Avail Also Re: Cogent Comments and Next Wrinkle Re: FW: Poleline | 0.10 | $440.00 | $44.00 |
| 12/30/2025 | 1 email sent/reviewed regarding Poleline | 0.20 | $440.00 | $88.00 |
| | | | Total | $1,144.00 |

The Court will reduce the fee award by $1,144.

### 2.      Lumped time entries

The Court next addresses the issue of block billing or lumping.  "Lumping occurs where multiple services are included in the same time entry, making it difficult to discern how much time was spent on each task and whether that time was reasonable."  *In re Blue Circle Invs., LLC*, No. 21-00712-NGH, 2022 WL 1241426, at *2 (Bankr. D. Idaho Apr. 27, 2022).  Lumping prevents the bankruptcy court from determining whether individual tasks were expeditiously performed within a reasonable amount of time. *CPESAZ Liquidating, Inc.*, 2022 WL 18067792, at *7; *see also Charterhouse Boise Downtown Props., LLC, v. Boise Tower Assocs., LLC, (In re Charterhouse Boise Downtown Props., LLC)*, 2010 WL 1049968 at *4 n.4 (Bankr. D. Idaho Mar. 17, 2010) (noting that attorneys may format their billing records as they see fit, but when seeking to have another party bear those fees, they must document their time with enough precision to permit meaningful judicial review).  In short, block billing undermines judicial review. The UST objected to the following two entries on the basis of lumping:

MEMORANDUM OF DECISION - 5

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| 10/23/2025 | Case Administration tcw cl reg Plan, MOR; discussions with potential buyers; follow upup email to cl with MOR and DIP information | 1.20 | $440.00 | $528.00 |
| 12/8/2025 | revise plan, misc back and forth emails with cl reg same and Plan related motions (dip financning and substitution of collateral) | 4.50 | $440.00 | $1,980.00 |
| | | | Total | $2,508.00 |

In his Response, Geile argues the time entries do not lump unrelated tasks, but reflect closely related activities performed contemporaneously as part of a single work flow.  The Court disagrees.

The October 23 time entry combines three distinct tasks: (1) a telephone conversation with the client regarding the chapter 11 plan and a monthly operating report; (2) discussions with potential buyers; and (3) a follow up email to the client regarding the monthly operating report and DIP information (what was meant by "DIP information" is unclear from the description provided).  Each task is sufficiently different to warrant its own documentation of time to permit meaningful review.  The Court will therefore reduce the 1.2 hour time entry to .6 hours, which reduces the fee award by $264.

The December 8 time entry combines four separate tasks: (1) the preparation of a chapter 11 plan; (2) the preparation of a motion to approve financing pursuant to § 364; (3) the preparation of a motion to substitute the collateral of a secured creditor; and (4) an exchange of emails with the client regarding each of these matters.  Each task is sufficiently different to warrant its own documentation of time to permit meaningful review.  For example, the Court is unable to discern how much time Geile spent revising the chapter 11 plan, or preparing either of the motions.  The Court will therefore reduce the 4.5 hour time entry to 2 hours, which reduces the fee award by $1,100.

MEMORANDUM OF DECISION - 6

### 3.      Duplication of Services.

The UST identified two of Geile's time entries, both dated December 8, 2025, that are nearly identical. Both entries record 1.8 hours of work for revisions to the Debtor's chapter 11 plan, totaling $792 each. Geile concedes the duplication. *See* Response at 4. The Court will therefore reduce the fee award by $792.

### 4.      Unnecessary services

Professional services need not result in an actual material benefit to the estate in order to be compensable. *Ferrette & Slater v. United States Tr. (In re Garcia),* 335 B.R. 717, 724 (9th Cir. BAP 2005). "Instead, a professional need demonstrate only that the services were reasonably likely to benefit the estate at the time rendered." *Bank of America, N.A., v. Horizon Ridge Med. & Corp. Ctr., LLC (In re Horizon Ridge Med. & Corp. Ctr., LLC)*, 2016 WL 742716, at *6 (9th Cir. BAP Feb. 23, 2016).

The UST objects to fees incurred for work it characterizes as unnecessary, including time spent: (1) preparing a substitution of collateral agreement; (2) preparing a motion to obtain financing pursuant to § 364; (3) preparing a chapter 11 plan that is dependent on the substitution collateral agreement and motion to obtain financing; (4) seeking a determination that the information in the plan was adequate pursuant to § 1125(f)(1); (5) reviewing certain documents; and (6) preparing monthly operating reports. In his response, Geile argues that these objections amount to a disagreement with Debtor's litigation strategy rather than a legitimate challenge to the reasonableness of the fees.

MEMORANDUM OF DECISION - 7

### a.     Substitute Collateral Agreement

Debtor attempted to pursue what it describes as a "square-up" lot line adjustment, which would have resulted in a swap of small portions of Debtor's property with a landowner with adjoining property.  *See* Doc. No. 29 (the "Substitute Motion").  The adjustment would have created rectangular parcels for Debtor and the neighbor, and according to Debtor increased the value of Debtor's real property.  The neighboring landowner declined to participate, and Kirk Distributing LLC ("Kirk Distributing"), which holds a lien encumbering Debtor's real property, did not consent to the swap of its collateral.  While Debtor ultimately abandoned the Substitute Motion, the sparse record before the Court is sufficient to demonstrate that Geile's services relating to the Substitute Motion were reasonably likely to benefit the estate at the time rendered.  It is possible such a land swap could have increased the value and marketability of Debtor's real property.  Accordingly, the Court will overrule the UST's objection regarding the time spent preparing the Substitute Motion.

### b.     DIP Financing

Debtor also sought approval of post-petition financing pursuant to § 364.  *See* Doc. No. 31 (the "DIP Motion").  The proposed financing would have come from an insider and primed Kirk Distributing's lien encumbering Debtor's real property.  The UST argues that the time Geile spent preparing the DIP Motion did not benefit the Debtor because the DIP Motion was procedurally deficient and could not be approved by the Court.  The UST identifies several deficiencies.  First, the DIP Motion was not accompanied by a credit agreement or form of order as required by Rule 4001(c)(1).

MEMORANDUM OF DECISION - 8

Second, the DIP Motion failed to disclose the relationship between Debtor and the insider lender as required by LBR 4001-1(b)(1).  Third, the DIP Motion did not disclose the balances owed to entities holding or claiming an interest in the proposed collateral, including Kirk Distributing and Kootenai County, both of which assert lien interests in Debtor's real property, as required by LBR 4001(b)(6).

Quantifying the time Geile spent on the DIP Motion is difficult for two reasons. First, his time entries are often vague, and second, entries related to the DIP Motion, the Substitute Motion, and the chapter 11 plan are sometimes lumped together.  Based on its review of the record, the Court has identified time entries totaling 4.5 hours attributable to the DIP Motion:

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| 12/2/2025 | draft motion for DIP financing | 2.20 | $440.00 | $968.00 |
| 12/8/2025 | Motion_DIP_Financing created, then edited | 0.60 | $440.00 | $264.00 |
| 12/8/2025 | Declaration_Stephen_Davis_DIP_Financing created, then edited | 0.60 | $440.00 | $264.00 |
| 1/6/2026 | Case Administration review and draft response to the UST objection to dip financing | 1.00 | $440.00 | $440.00 |
| 1/6/2026 | Full_DIP_Response_and_Supplemental_Motion DRAFT created | 0.10 | $440.00 | $44.00 |
| | | | Total | $1,980.00 |

While these entries may not capture all of the time Geile spent working on the DIP Motion, the Court will sustain the UST's objection regarding these fees.  The DIP Motion was procedurally deficient and could not have been approved as filed, meaning the work reflected in these entries was not reasonably likely to benefit the estate at the time it was performed.  The Court will reduce the fee award by $1,980.

MEMORANDUM OF DECISION - 9

### c.      Plan Drafting

The UST also objects to the time Geile spent related to multiple versions of

Debtor's chapter 11 plan, noting that Geile spent approximately 21.7 hours categorized as

"plan" related activity.  While the UST does not object to any itemized time entries, it

argues that substantially all of this time was of little to no value to the estate because

confirmation of these plans is unlikely, and perhaps not possible given the requirements

of § 1129.  The Court will overrule the UST's objection.  No confirmation hearing has

been held, and it is premature to conclude that Debtor will be unable to satisfy the

requirements of § 1129.  The record shows that Geile prepared multiple plan versions,

attempted to negotiate plan terms with creditors, and has been working toward

confirmation.  That is sufficient to demonstrate that the time spent on plan-related work

was reasonably likely to benefit the estate at the time it was performed.

### d.      Adequacy of Plan Information

The UST also objects to the time Geile spent related to prosecuting a motion to

determine the information in Debtor's chapter 11 plan was adequate pursuant to

§ 1125(f)(1).  *See* Doc. No. 42 (the "Adequacy Motion").  The Court will sustain this

objection.

Pursuant to § 1125(f)(1), in a small business case, the Court may determine that a

chapter 11 plan itself provides adequate information and that a separate disclosure

statement is not necessary.  The Adequacy Motion requests the Court make such a

finding.  Significantly, this is a single asset real estate case, and not a small business case.

A "small business case" is one that is filed by a small business debtor that has not elected

MEMORANDUM OF DECISION - 10

to proceed under subchapter V of the Code.  *See* § 101(51C).  The term "small business

debtor" specifically excludes single asset real estate debtors.  *See* § 101(51D)(A).  Thus,

Debtor was ineligible to invoke § 1125(f)(1), and Geile was unable to provide the Court

any authority permitting a single asset real estate debtor to proceed under this Code

section.  Accordingly, the Court finds that the below time entries related to the Adequacy

Motion were not reasonably likely to benefit the estate at the time rendered.

| Date | Description | Hours | Rate | Amount |
|---|---|---|---|---|
| 12/2/2025 | draft motion to consider Plan with adequate language | 1.00 | $440.00 | $440.00 |
| 12/8/2025 | Motion to Determine Adequacy of Plan and to Set a Final Hearing edited | 0.20 | $440.00 | $88.00 |
| 1/17/2026 | Work on Plan related items revise motion for adequacy of plan.5; | 0.50 | $440.00 | $220.00 |
| 1/20/2026 | Motion to Determine Adequacy of Plan and to Set a Final Hearing edited | 0.50 | $440.00 | $220.00 |
| | | | Total | $968.00 |

The Court will reduce the fee award by $968.

### e.       Review of Certain Documents

The UST's Supplement also identified six time entries as excessive or

unnecessary.  *See* Supplement at 4.  Three of those entries are vague and have already

been addressed above.  The remaining entries relate to Geile's review of certain

documents provided to the UST and orders and minutes filed by the Court.  The Court

will overrule the UST's objection regarding these entries as it was reasonably necessary

for Geile to review these documents in connection with representing Debtor in this case.

### f.       Monthly Operating Reports

The UST appropriately objects to three time entries, totaling 1.6 hours, for Geile's

preparation of two monthly operating reports arguing that billing at $440 per hour for this

work is unreasonable for an entity that is essentially not operating a business.

MEMORANDUM OF DECISION - 11

This Court has held that it is not reasonable for attorneys to gather financial data from their clients and prepare monthly operating reports in full. *In re Root*, 2010 WL 4117455, at *3 (Bankr. D. Idaho 2010). Some legal assistance may be necessary to help debtors understand and comply with their financial accountability obligations in bankruptcy. *Id*. Attorneys, however, are "retained to provide *legal* services, not accounting or clerical assistance, nor to perform administrative duties placed on counsel's clients." *Id*. (emphasis in original). Thus, counsel who prepare monthly operating reports in full exceed the scope of reasonable legal services. Accordingly, the Court will disallow one hour of Geile's time spent preparing the monthly operating reports and reduce the fee award by $440.

**CONCLUSION**

Under its duty to review the reasonableness of professional fees under § 330, the Court has carefully reviewed Geile's time entries and will reduce the requested fee award by $6,688.00. Geile is allowed fees of $21,798.00 and expenses of $173.92. Geile shall submit a separate order consistent with this decision, endorsed by counsel for the UST.

DATED: June 09, 2026

_____
NOAH G. HILLEN
Chief U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 12