**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF IDAHO**

| | |
|---|---|
| **IN RE**<br><br>**POLELINE LENDER LLC**<br><br>**Debtor.** | **Case No. 25-20295-NGH** |

# MEMORANDUM OF DECISION

## INTRODUCTION

Poleline Lender LLC ("Debtor") is a single asset real estate debtor engaged in developing commercial property located in Post Falls, Idaho. It seeks confirmation of its first amended chapter 11 plan, Doc. No. 61 (the "Plan"), and approval of Debtor in Possession financing, Doc. No. 67 (the "DIP Financing Motion"). Both are opposed by Kirk Distributing, Inc. ("Kirk Distributing"). After considering the evidence presented at the confirmation hearing and the parties' closing briefs, the Court concludes that Debtor's Plan does not meet the requirements for confirmation, and the Court will deny confirmation of Debtor's Plan. And because Debtor's DIP Financing Motion is only necessary to implement the Plan, it will also be denied. The Court issues the following findings of fact and conclusions of law in accordance with Rules 7052 and 9014.[1]

[1] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532, and all citations to "Rule" are to the Federal Rules of Bankruptcy Procedure.

## RELEVANT FACTS

Debtor is owned by its member-manager DWD Development, LLC ("DWD Development"). *See* Ex. 100 at 4. Stephen Davis is a member of DWD Development. Debtor owns a 0.37-acre parcel of vacant property located along State Highway 41 in Post Falls, Idaho (the "Real Property"). Ex. 102 at 6. The Real Property is undeveloped and generates no revenue. How Debtor acquired the Real Property is relevant to this decision.

In December 2022, Kirk Distributing sold the Real Property to MSJK, LLC for $283,883.52. MSJK, LLC is owned by Stephen Davis' daughter and son-in-law. *Id*. at 7. MSJK, LLC executed a promissory note in favor of Kirk Distributing for the amount of the sale price. Ex. 112 at 12-14 (the "Note"). MSJK, LLC also executed a deed of trust in favor of Kirk Distributing to secure the Note. *Id*. at 16-20 (the "Deed of Trust"). The Note required monthly interest-only payments at 9% until it matured in 18 months, but MSJK, LLC only made six of those payments, including its last payment in June 2023. *Id*. at 10. That same month, MSJK, LLC transferred the Real Property to Tullamore Lender, LLC ("Tullamore Lender"). Ex. 102 at 7. Stephen Davis's son-in-law owns approximately 95% of Tullamore Lender, and MSJK, LLC owns the remaining 5%. *Id*. Kirk Distributing eventually initiated a nonjudicial foreclosure, scheduling a September 2025 trustee's sale.

On August 27, 2025, Tullamore Lender executed a special warranty deed transferring the Real Property to DWD Development for $10 "and other valuable considerations." Ex. 103 at 28. That same day, DWD Development executed a special

warranty deed transferring the Real Property to Debtor for $10 "and other valuable considerations." *Id*. at 35. Debtor then granted DWD Development an irrevocable option to purchase the Real Property. *Id*. at 39. On September 8, 2025, prior to the scheduled foreclosure sale, Debtor filed this chapter 11 bankruptcy.

As noted, Debtor's Plan works in conjunction with its DIP Financing Motion, through which Debtor seeks Court approval to borrow $60,000 from Tullamore Lender, an insider. Pursuant to § 364(d), Debtor proposes to secure its loan from Tullamore Lender with a priming lien senior to Kirk Distributing's lien encumbering the Real Property. Debtor's Plan proposes to use those loan proceeds to prepay 20 months of interest-only payments to Tullamore Lender and Kirk Distributing and to modify Kirk Distributing's claim. Debtor's Plan also proposes to pay Kirk Distributing in full through either a sale or refinancing of the Real Property.

## ANALYSIS

### A. The Plan and Applicable Confirmation Standards

The Court starts with the applicable standards for confirmation of a chapter 11 plan, which are detailed in § 1129. As the plan proponent, Debtor must demonstrate by a preponderance of the evidence that the Plan satisfies all confirmation requirements. *United States ex rel. Farmers Home Admin. v. Arnold & Baker Farms (In re Arnold & Baker Farms)*, 177 B.R. 648, 654-55 (9th Cir. BAP 1994). Additionally, bankruptcy courts have an independent duty to review and determine the legality of a plan's contents. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276-78 (2010).

Section 1129(a)(1) requires a chapter 11 plan comply "with the applicable provisions" of the Bankruptcy Code, which vary depending on the details of a case and the terms of a proposed plan. The requirements of § 1123, however, always apply. Section 1123 addresses the mandatory and optional provisions of a plan. Accordingly, if a plan fails to include something required by § 1123 or violates a rule found elsewhere in the Bankruptcy Code, then § 1129(a)(1) prohibits confirmation.

Debtor's Plan suffers from at least two deficiencies rendering it unconfirmable. First, the Plan does not provide adequate means of implementation under § 1123(a)(5), which is required under § 1129(a)(1). Second, the Plan attempts to impermissibly modify MSJK, LLC's obligations to Kirk Distributing since MSJK, LLC is not a debtor in bankruptcy.

**1. Section 1123(a)(5)**

Section 1123(a) details eight requirements for a chapter 11 plan, but not all apply in every case. Here, Debtor's Plan does not comply with § 1123(a)(5), which requires that a plan "provide adequate means for the plan's implementation." The word "adequate" is not defined in the Bankruptcy Code, but in its ordinary usage means "sufficient, commensurate, or equal to what is required." *In re Claar Cellars LLC*, 623 B.R. 578, 592 (Bankr. E.D. Wash. 2021) (quoting *Irving Tanning Co. v. Me. Superintendent of Ins. (In re Irving Tanning Co.)*, 496 B.R. 644, 664 (1st Cir. BAP 2013)). Section 1123(a)(5) "requires that the plan specify means sufficient to allow all terms, including whatever creditor payments are proposed in the plan, to be completed." *Id*.

Debtor's proposed Plan treatment for Kirk Distributing's claim is problematic because it attempts to modify payment terms of a contract between Debtor and Kirk Distributing. No such contract exists. Further, even if the Court were to assume that the reference to the Note was merely a way to identify Kirk Distributing's interest in the Real Property that was being altered in the Plan, the Plan language and terms do not adequately specify the proposed treatment of Kirk Distributing's secured interest.

Under the Plan, and subject to the approval of the DIP Financing Motion, Kirk Distributing would be paid $42,582.42, which purports to prepay 20 months of interest-only payments. Ex. 103 at 7. Kirk Distributing would retain its lien encumbering the Real Property, but that lien would be primed by a lien granted to Tullamore Lender through the DIP Financing Motion. Further, that lien would not secure any obligation Debtor owed to Kirk Distributing. Significantly, the Plan states "[t]he Plan does not change any other terms of the Contact [sic] between the Debtor and Kirk Distributing. A copy of the contract is attached to Kirk [Distributing]'s Proof of Claim 1-1 page 12-14. Contractual interest is 9% per annum." *Id.* However, Debtor is not a party to the Note attached to Kirk Distributing's proof of claim. MSJK, LLC is the borrower under the Note and the party bound by its terms. Ex. 112 at 12.

In a chapter 11 reorganization, a debtor's prepetition obligations are generally replaced by those specified in and undertaken under the confirmed plan. Upon confirmation, the provisions of the plan bind the debtor and creditors. *In re Boise Gun Co.*, 2018 WL 400719, at *5 (Bankr. D. Idaho Jan. 12, 2018) (citing § 1141(a)). Debtor's Plan is ambiguous regarding whether Debtor is obligated to pay Kirk Distributing

$42,582.42 at confirmation. On the one hand, the Plan says that Kirk Distributing will be paid $42,582.42 upon approval of the DIP Financing Motion, suggesting the payment is required. On the other hand, the payments are purportedly to prepay interest on a promissory note that does not exist. Arguably, the Plan seeks to incorporate the terms of a nonexistent contract, including the interest only payment terms, leaving Kirk Distributing without the ability to enforce that obligation. Section 1123(a)(5) requires more specificity from the Plan.

At hearing, Debtor's counsel acknowledged the Plan mischaracterizes the parties to the Note but urged the Court to overlook this as a typographical error. Even if the Court were to do so, however, the Plan still lacks sufficient detail to provide adequate means for its implementation. For example, the Plan fails to specify when Debtor's obligation to Kirk Distributing matures, fails to specify what constitutes an event of default, and fails to specify what happens should Debtor fail to pay the lien amount in full. The Plan also lacks firm milestones for commencing or completing a sale or refinancing, and it includes no range of sale or refinancing terms to which Debtor would be bound. This lack of detail renders the Plan unconfirmable.

**2. Section 524**

The Plan also appears to violate § 524(e), which provides that, subject to a narrow and inapplicable exception, "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." Section 524(e) "prevents a reorganization plan from inappropriately circumscribing a creditor's claims against a debtor's co-debtor or guarantors over the discharged debt." *Blixseth v. Credit*

*Suisse*, 961 F.3d 1074, 1083 (9th Cir. 2020). "Put differently, section 524(e) precludes a co-obligor of a bankrupt debtor from piggybacking on rights the debtor enjoys under the Bankruptcy Code, including the right to discharge or restructure indebtedness. If a co-obligor seeks . . . to restructure its liability on a jointly liable claim, section 524(e) effectively requires the co-obligor to commence its own bankruptcy case." *In re Claar Cellars LLC*, 623 B.R. at 593.

Debtor's Plan appears to violate § 524(e) because, despite the argument that it was a typographical error, the Plan specifically references the Note and asserts it does "not change any other terms," thus asserting it alters or modifies some terms of the Note, a contract to which Debtor is a stranger. In doing so, the Plan impermissibly seeks to alter the contractual obligations that MSJK, LLC, a nondebtor, owes to Kirk Distributing. Debtor is prohibited from restructuring MSJK, LLC's obligations to Kirk Distributing in this bankruptcy case.

**B. The DIP Financing Motion**

Debtor's DIP Financing Motion would provide the funds necessary to implement Debtor's Plan. If approved, the money would fund Debtor's initial payments under the Plan and give Debtor additional time to sell the Real Property or refinance the debt encumbering it. Because the Court will deny confirmation of the Plan, approval of the DIP Financing Motion is rendered moot as Debtor has no authority or requirement to make the distributions contemplated by the Plan. Accordingly, the DIP Financing Motion will be denied without prejudice.

**CONCLUSION**

For the reasons set forth above, the Court will deny confirmation of the Plan and deny the DIP Financing Motion. The Court will enter a separate order consistent with this decision.

DATED: October 07, 2026

NOAH G. HILLEN
Chief U.S. Bankruptcy Judge